## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SCHERING-PLOUGH HEALTHCARE PRODUCTS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 09-268-SLR |
| NEUTROGENA CORPORATION, | ) ) ) |
| Defendant. | ) |

Sheldon K. Rennie, Esquire, Ronald J. Shaffer, Esquire, Scott L. Vernick, Esquire, and Dana L. Sichel, Esquire, of Fox Rothschild LLP, Wilmington, Delaware. Counsel for Plaintiff.

Steven J. Balick, Esquire, John G. Day, Esquire, and Tiffany Geyer Lydon, Esquire, of Ashby & Geddes, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Harold P. Weinberger, Esquire, Jonathan M. Wagner, Esquire, and Tobias B. Jacoby, of Kramer Levin Naftalis & Frankel LLP, New York, New York.

## MEMORANDUM OPINION

Dated: August 5, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Schering-Plough HealthCare Products, Inc. ("plaintiff") filed this action against Neutrogena Corporation ("defendant") on April 21, 2009. (D.I. 1) Both parties are manufacturers of sunscreen products. (D.I. 5 and 12) In its complaint, plaintiff alleges that defendant has released multiple advertisements containing false and misleading statements in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Delaware Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2532 (2009). (D.I. 5) Defendant submitted an answer and counterclaims that plaintiff has released similar print advertisements and television commercials containing false and misleading claims in violation of the Lanham Act and the DTPA. (D.I. 32) Currently pending before the court is plaintiff's motion for a preliminary injunction, filed on April 22, 2009.[1] (D.I. 4) A motion hearing addressing plaintiff's motion was held on May 28, 2009 and the parties submitted post-hearing briefs. For the following reasons, the court denies plaintiff's motion.

## II. BACKGROUND

### A. Sunscreen Technology

The damaging effects of the sun to the skin are caused by ultraviolet ("UV") rays. UV rays are categorized in one of two ways: ultraviolet A ("UVA") rays that occur between the wavelengths of 320 to 400 nanometers; and ultraviolet B ("UVB") rays that occur between the wavelengths of 290 to 320 nanometers. UVB rays have been shown

---

[1]Defendant filed its own motion for a preliminary injunction on July 20, 2009 (D.I. 38);  briefing has not yet been completed on this motion.

to cause skin cancer, while UVA rays contribute to skin damage (such as wrinkling and pigmentation) and can trigger the carcinogenic effects of UVB rays.

Different sun protection factors ("SPF(s)") are used to quantify a sunscreen's ability to protect against sunburn. While the SPF of a sunscreen undisputably characterizes its ability to protect against UVB rays, the parties disagree as to whether a sunscreen's ability to protect against UVA rays is also subsumed within the SPF measurement. Plaintiff's expert, Dr. Patricia Agin ("Agin"), contends that a sunscreen's SPF measurement quantifies its ability to protect against sunburn caused "primarily by UVB rays, but with a significant contribution from UVA rays." (D.I. 5, Agin Decl. ¶ 14) In contrast, defendant's expert, Dr. Yohini Appa ("Appa"), asserts that a sunscreen's "SPF does not address the ability of a sunscreen to protect against the full spectrum of UVA rays." (D.I. 13 at ¶ 6) The parties do agree that another measurement, the protection factor A ("PFA"), can be used to quantify a sunscreen's protection against UVA rays.

Sunscreen products must be photostable to achieve desired protection.[2] One of the most effective chemicals in blocking UVA rays is avobenzone,[3] which is not photostable. (*Id.* at ¶ 9) To achieve photostability of avobenzone within defendant's sunscreen products, defendant has patented a formulation of avobenzone with diethylhexyl 2,6-naphthalate and oxybenzone, and has given it the proprietary name

---

[2]Photostability "is the capacity of a sun protection product to sustain UV protection during exposure to sunlight; [s]unscreen products that are photostable inhibit the breakdown of the product's sun protection ingredients when exposed to sunlight for prolonged periods of time." (D.I. 5, Agin Decl. ¶¶ 25-26)

[3]1-(4-methoxyphenyl)-3-(4-tert-butylphenyl)propane-1,3-dione; chemical formula $C_{20}H_{22}O_3$.

2

"Helioplex®." (*Id.* at ¶ 10) Plaintiff's sunscreen products protect skin from both UVA and UVB rays and are photostable without using Helioplex®. (D.I. 5, Agin Decl. ¶ 30)

## B. The Parties and Contested Advertisements

Plaintiff owns and manufactures the Coppertone® brand of sunscreen including the Coppertone Sport® line which was first introduced in 1992. (D.I. 5, Berman Decl. ¶¶ 3, 6) Defendant manufactures and markets sunscreen products including the Neutrogena Ultimate Sport® line that was first introduced in late 2008. (D.I. 14 at ¶¶ 5-6) Defendant began advertising its Ultimate Sport® line in March and April 2009. (*Id.* at ¶¶ 8, 11)

In March 2009, defendant began providing to retail stores an in-store display case for its sunscreen products including the Ultimate Sport® line. (*Id.* at ¶ 11). The display contained an illustration comparing the effects of a layer of SPF "without Helioplex®" to the effects of a layer of SPF "with Helioplex®" on the underlying skin (hereinafter, the "Helioplex® illustration"). (D.I. 15, ex. Q) The "without Helioplex®" portion shows UVB rays (arrows) being reflected away from the skin and UVA rays (arrows) penetrating through the epidermis, dermis, and hypodermis.[4] (*Id.*) The same graphic is repeated with respect to SPF "with Helioplex®," except that both UVB and UVA rays (arrows) are depicted as reflecting away from (and not penetrating) the surface of the skin. (*Id.*) Plaintiff avers in its complaint that the Helioplex® illustration is false because plaintiff's products do provide protection from UVA rays without Helioplex®. (D.I. 1 at ¶ 33)

---

[4] The epidermis is the outermost layer of the skin; the dermis is the layer of skin between the epidermis and the hypodermis, which is the lower most layer of the skin.

3

Defendant states that it has since introduced a new in-store display promoting its Ultimate Sport® line.[5] (D.I. 19 at 6) The current form of the display does not contain the Helioplex® illustration directly on the front panel, replacing it with the phrase "superior sun protection - helioplex®: broad spectrum uva•uvb." (Id., ex. D) The Helioplex® illustration is instead contained within a pamphlet attached to the display. (Id.)

Defendant's "club pack" contains multiple Ultimate Sport® products and is sold in large retail stores such as BJ's and Sam's Club. The club packs also contain a pamphlet with the Helioplex® illustration. (D.I. 14 at ¶ 9; D.I. 15, ex. O)

In April 2009, defendant began running a print advertisement ("print ad") with the headline "Best line of sport sun protection."[6] (D.I. 14 at ¶ 8) Plaintiff claims that defendant's assertion that its products offer the "[b]est line" of protection is false because, when compared on a head-to-head basis, plaintiff's products "offer UVA and SPF protection that exceeds, or is comparable to, [defendant's] products." (D.I. 1 at ¶ 39)

The print ad also contains a bar graph that directly compares the Neutrogena Ultimate Sport® line to the Coppertone Sport® line entitled "Helioplex® [-] The

---

[5]Plaintiff asserts that the original display remains in "literally hundreds of retail outlets." (D.I. 31 at 3) Because the illustration at issue is also contained in the newer displays, the court's analysis applies equally to both illustrations.

[6]Plaintiff's complaint additionally references one of defendant's internet advertisements stating that "[n]ew Neutrogena Ultimate Sport® [p]rotection contains the best line of sport protection available with sunscreen fortifiers"; plaintiff does not reference this advertisement in its post-hearing briefing to support its claims of falsehood.

4

Technology behind superior UVA/UVB protection." (D.I. 15, ex. J) Below the title appears a bar graph comparing "UVA" protection to "SPF" protection for both Neutrogena Ultimate Sport® and Coppertone Sport® sunblocks. Combined, the UVA and SPF bars for Neutrogena Ultimate Sport® make up a bar approximately twice the height of the corresponding bar for Coppertone Sport®. Beside this graph appears the statement: "With Helioplex®, UVA defense stays strong to help provide the highest combined UVA/UVB protection across the entire Neutrogena Ultimate Sport® line. Precisely why it's the best line of sport sun protection." (Id.) Plaintiff asserts that the bar "graph is inaccurate, not to scale and employs a wholly irrelevant analysis having nothing to do with individual product effectiveness, which when taken into context makes the entire advertisement false." (D.I. 1 at ¶ 57)

In its answer, defendant denies, in pertinent part, all allegations relating to plaintiff's claims of false advertising and asserts four counterclaims against plaintiff.[7] (D.I. 33) Defendant contends that plaintiff has disseminated false and misleading claims in its advertisements for Coppertone NutraShield® with Dual Defense® and Coppertone Sport® spray in violation of Section 43(a) of the Lanham Act and the DTPA. (Id. at ¶¶ 97-98) Plaintiff's print advertisement for its NutraShield® product with Dual Defense® states that "only Coppertone NeutraShield® has Dual Defense®," and that "Dual Defense® gives you: (1) [a]dvanced UVA/UVB protection; and (2)

---

[7]Defendant's initial answer to plaintiff's complaint contained two counterclaims against plaintiff corresponding to advertising for plaintiff's NutraShield® product. (D.I. 16 at 11-13) Defendant's amended answer and counterclaims contain two additional counterclaims corresponding to plaintiff's Sport® spray product line. (D.I. 33 at 14-18)

[n]ourishing antioxidants that help neutralize free radicals to help skin repair itself."[8]
(Id., ex. B) Defendant claims that these statements are false and misleading as plaintiff's NutraShield® sunscreens are not the only products available which provide both UVA/UVB protection and antioxidants to promote skin repair. (Id. at ¶ 97) Defendant further claims that plaintiff has aired television commercials for its Sport® spray sunscreens making the "false and misleading claims that: (1) 28 percent of what Neutrogena Ultimate Sport® spray users spray on their bodies is chemical propellant; (2) Coppertone Sport® sprays have been proven to provide 'better protective coverage' than Neutrogena Sport® sprays; and (3) Coppertone Sport® sprays provide better sun protection compared to Neutrogena Ultimate Sport® sprays." (Id. at ¶ 98) Defendant bases these assertions on two television advertisements that compare plaintiff and defendant's products after spray application on the bodies of two athletes. The commercial states that defendant's product contains "28% chemical propellant" compared to plaintiff's product consisting of "100% sunscreen formula," and also graphically illustrates[9] and states that Coppertone® spray provides better protective coverage than Neutrogena® spray.[10] (Id., ex. C)

---

[8]Plaintiff's television commercial for its NutraShield® sunscreen with Dual Defense® states that "Only NutraShield® has dual defense: One, I get powerful sun protection . . . and two, antioxidants that promote natural skin repair." (D.I. 33, ex. A)

[9]An image is superimposed on the athletes' bodies and shows a "deep" blue covering over the athlete's body who applied plaintiff's Sport® spray product, and then a "lighter" covering over the athlete's body who applied defendant's Ultimate Sport® spray product. (D.I. 33, ex. C)

[10]The second television commercial does not directly compare plaintiff's Sport® spray products to defendant's spray products; however, it states that plaintiff's Sport® spray products provide better coverage than ordinary sprays. (D.I. 33, ex. D)

6

## III. STANDARD OF REVIEW

Traditional rules of equity apply to requests for injunctive relief. *See eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). "The decision to grant or deny . . . injunctive relief is an act of equitable discretion by the district court." *Id.* The grant of a preliminary injunction is considered an "extraordinary remedy" that should be granted only in "limited circumstances." *See Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted).

The moving party for injunctive relief must establish: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Id.* (citation omitted). The burden lies with the movant to establish every element in its favor or the grant of a preliminary injunction is inappropriate. *See P.C. Yonkers, Inc. v. Celebrations, the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005). If either or both of the fundamental requirements – likelihood of success on the merits and probability of irreparable harm if relief is not granted – are absent, an injunction cannot issue. *See McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 523 (3d Cir. 1994).

## IV. DISCUSSION

### A. Lanham Act and the DTPA

#### 1. Section 43(a) of the Lanham Act

Section 43(a) of the Lanham Act provides that:

7

> [A] person who shall . . . use in connection with any goods or services . . .
> any false description or representation, including words or other symbols
> tending falsely to describe or represent the same . . . shall be liable in a
> civil action by any person . . . who believes that he is or is likely to be
> damaged by the use of such false description or representation.

15 U.S.C. § 1125(a).  There are two different theories of recovery for false advertising

under section 43(a): "(1) an advertisement may be false on its face; or (2) the

advertisement may be literally true, but given the merchandising context, it nevertheless

is likely to mislead and confuse consumers." *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d

939, 943 (3d Cir. 1993).  The test for literal falsity is an objective one for the court's

determination.  "[I]f a defendant's claim is untrue, it must be deemed literally false"

regardless of the advertisement's impact on the buying public. *Id.* at 943-44.  Further,

"only an unambiguous message can be literally false," and "[a] literally false message

may be either explicit or conveyed by necessary implication when, considering the

advertisement in its entirety, the audience would recognize the claim as readily as if it

had been explicitly stated." *Novartis Consumer Health Inc. v. Johnson & Johnson-

Merck Consumer Pharms. Co.*, 290 F.3d 578, 586-87 (3d Cir. 2002) (quoting *Clorox Co.

v. Procter & Gamble Commercial Co.*, 228 F.3d 34, 35 (1st Cir. 2000)) (internal

quotations omitted).  Conversely, "[w]hen the challenged advertisement is implicitly

rather than explicitly false, its tendency to violate the Lanham Act by misleading,

confusing or deceiving should be tested by public reaction." *Castrol*, 987 F.2d. at 943.

### 2. The DTPA

Plaintiff does not specify a particular section of the DTPA as the basis of its

claim.  (D.I. 1 at ¶ 90)  The DTPA prohibits conduct that "[d]isparages the goods,

services, or business of another by false or misleading representation of fact" or that

8

generally "creates a likelihood of confusion or of misunderstanding." 6 Del. C. §§ 2532 (a)(8) & (a)(12). As "a complainant need not prove competition between the parties or actual confusion or misunderstanding" to prevail in an action under the DTPA, 6 Del. C. § 2532(b), plaintiff avers that by "meeting the requirements for a claim under the Lanham Act, [it] will necessarily meet the requirements for a claim under the [DTPA]." (D.I. 5 at 9)

## B. The Parties' Arguments

Plaintiff seeks to enjoin defendant's use of the Helioplex® illustration on the grounds that it "necessarily convey[s] that sunscreen products without Neutrogena's Helioplex® do not provide protection from the sun's UVA rays." (D.I. 31 at 1-2)  Plaintiff also seeks to enjoin defendant's use of the bar graph, which "conveys the false implication that, on average, the Coppertone Sport® line of sunscreen products only provides half the sunburn protection when compared to Neutrogena's Ultimate Sport® line of sunscreen products" and "double counts UVA protection because UVA is already subsumed within a product's SPF measurement."[11]  (Id.)

### 1. The Helioplex® illustration

---

[11]Plaintiff, in its initial papers, sought to enjoin defendant from directly or indirectly using in commerce any claim, statement, or comparison asserting that: "only products with Helioplex® provide UVA and/or UVB protection," or that "Neutrogena Ultimate Sport® is the '[b]est line of sport sun protection'," or from "falsely representing and/or exaggerating the comparative performance of Coppertone Sport® and Neutrogena Ultimate Sport®." (D.I. 5 at 1)  The expert testimony at the preliminary injunction hearing focused on: (1) whether a sunscreen's effectiveness at blocking UVA rays is subsumed within its SPF score; (2) the meaning of the Helioplex® illustration described supra; and (3) the meaning of defendant's bar graph comparing Neutrogena Ultimate Sport® to Coppertone Sport®.  Plaintiff does not address the "best line" portion of the print ad in its post-hearing submission.  (D.I. 31)  The court very briefly addresses this statement infra insofar as it was part of the original motion.

9

As Helioplex® is a registered trademark that can only be used by defendant, plaintiff contends that any advertisement containing the phrase "without Helioplex®" necessarily implies that competitive sunscreens, including plaintiff's, do not provide protection against UVA rays. At the hearing, Agin testified that Coppertone® products "without Helioplex®" provide protection from UVA rays in the same way that Neutrogena® products "with Helioplex®" provide UVA protection – by photostabilizing avobenzone to deflect UVA rays from the skin. (D.I. 37 at 52-55) Appa testified for defendant that the Helioplex® illustration is not literally false because it communicates to consumers "the importance of UVA protection in addition to having excellent UVB protection." (*Id.* at 149) Further, there is no specific comparison to any other brands of sunscreen. (*Id.*) For this reason, defendant also asserts that, even if plaintiff were to demonstrate literal falsehood, it would not be entitled to a presumption of irreparable harm. (D.I. 30 at 8-9)

## 2. Print ad

Both parties commissioned independent PFA testing of the relevant products in connection with this litigation. Defendant obtained PFA values for its own Ultimate Sport®: SPF 55 lotion, SPF 55 spray, SPF 70+ face lotion, SPF 70+ lotion, and SPF 70+ sprays. (D.I. 13 at ¶ 23) Also tested were plaintiff's Sport®: SPF 15 lotion, SPF 15 continuous spray, SPF 30 sunblock lotion spray (trigger spray), SPF 30 stick, SPF 30 quick cover lotion spray, SPF 30 spray, SPF 30 lotion, SPF 30 continuous spray, SPF 50 "Faces" lotion, SPF 50 lotion, SPF 50 continuous spray, SPF 70+ lotion, and SPF 70+ continuous spray. (*Id.*) Using the lowest PFA values obtained for each product, defendant's testing revealed an average PFA for its Ultimate Sport®-branded

10

products of 30.2. (*Id.* at ¶ 26) Appa states that "the average PFA score for the top ten selling Coppertone Sport® products, which [defendant] tested *in vivo*, is 16.7."[12] (*Id.*) These figures reveal an approximate 40% difference between plaintiff and defendant's average PFA scores across its "Sport®"-branded lines. (*Id.*)

Plaintiff did not submit results from its independent PFA testing in support of its motion. According to Appa, plaintiff's independent PFA testing demonstrated an average PFA value for Neutrogena Ultimate Sport® of 22.9 (as compared to defendant's value of 30.2). (*Id.* at ¶¶ 27) Additionally, plaintiff obtained an average PFA value of 16.4 for Coppertone Sport® (as compared to defendant's average score of 16.7). (*Id.*) Using plaintiff's scores, the average PFA for Coppertone Sport® products is almost 30% lower than the average PFA scores for Neutrogena Ultimate Sport® products. (*Id.*)

It is not clear whether the parties commissioned testing to confirm the SPF values for the "sport" products at issue in this litigation. Appa points out that, according to the products' labeled SPF values, the average SPF for plaintiff's "Coppertone Sport®"-branded line of products is 38.5, as plaintiff offers products ranging from SPF 15 to 70+ under the "Sport®" label. The average SPF for defendant's "Ultimate Sport®"- branded line of products is 64, as defendant offers products ranging from SPF 55 to 70+ under the "Sport®" label. (D.I. 13 at ¶ 25) The result is a 40% SPF differential across the parties' complete "Sport®" lines. (*Id.*) Appa states that "[t]he

---

[12]The particular ten products (out of the thirteen mentioned) were not specifically identified. (D.I. 13 at ¶ 26) Appa further states that "[i]f the *in vivo* scores for the three Coppertone Sport® products that [defendant] did not test are included in the average calculation, the average PFA score for Coppertone Sport® is 15.1, which increases the difference between the product lines to approximately 50%." (*Id.*)

11

average SPF for the ten Coppertone Sport® products [plaintiff] tested *in vivo* is 41,"
while "[t]he average SPF for the ten Coppertone [Sport®] products [defendant] tested *in
vivo* is 37."[13]  (*Id.*)

Plaintiff asserts that, even using defendant's own calculations, its Coppertone
Sport® products offer 40% less "overall UVA/UVB" protection, not the near 100%
represented by defendant's bar graph. (D.I. 31 at 5 ("Since [defendant] chose to make
a scientific and mathematical comparison of ultraviolet protection between product
lines, it was obligated to do so in a scientifically accurate manner") (citation omitted))
Plaintiff also argues that it is inappropriate to rely on an "average" across product lines
because consumers do not "apply twelve sunscreen products at a time in order to
achieve the 'best average' sunscreen protection across a product line." (*Id.* at 6)

Plaintiff also argues that the print ad is scientifically inaccurate because the bar
graph double-counts UVA protection by portraying a bar for UVA and one for SPF,
which contains a measure of UVA protection. Agin testified that SPF indicates the
protection against sunburn from combined UVA and UVB radiation. (D.I. 37 at 25:4-6)
Plaintiff introduced several pieces of documentary evidence to this effect.[14]  (D.I. 31 at
4, citing H.Ex. P-6[15] at 809 (Agin and co-authors state that "the overall SPF is a
composite of the UV protection provided by the sunscreen product in both UV-B and

---

[13]It is not clear to the court which products Appa refers to in this portion of her
declaration, nor does it appear that either party's *in vivo* SPF testing appears of record.

[14]The documents cited by plaintiff were introduced into evidence during the
hearing and were not objected to by defendant. The documents have not been
docketed with the court. The court cites to the hearing exhibit numbers ("H.Ex. P-X")
with notes to the full citations.

[15]SUNSCREENS 809 (Nadim A. Shaath, ed., Taylor & Francis Group) (2005).

12

UV-A"); H.Ex. P-10[16] (defendant's own publication stating that "[the] SPF rating

describes the protection against acute sunburning (both UVB and UVA in approximately

80% to 20% proportions")).

Several of these sources are comments submitted in response to a 2007

proposed rule change by the FDA amending the final monograph for over-the-counter

sunscreens. In a section entitled "Comments on the Labeling of Sunscreen Drug

Products with High SPF Values," the FDA stated that it

> agrees that the SPF value is one factor in a comprehensive sun protection
> program. However, the SPF is only a measure of protection from erythema (*i.e.*,
> UVB radiation-induced sunburn) and does not measure protection from other UV
> skin damage, such as that induced by UVA radiation.

(H.Ex. P-7[17]) In response, the Personal Care Products Council submitted a comment to

the FDA stating that "SPF is an indicator of combined UVA/UVB effectiveness against

sunburn. . . The SPF, therefore, cannot be solely described as 'UVB.' To do so is both

scientifically inaccurate and misleading," as the skin's sunburn response is caused

approximately 80% by UVB and 20% by UVA. (H.Ex. P-8[18] at 7-8) Johnson &

Johnson, defendant's parent company, submitted a comment opposing renaming "SPF"

---

[16]H.Ex. P-10 is a poster entitled "A Primer for Understanding and Communicating UVA Protection in Sunscreens," by T. Chen, Ph.D. et al., stating that Dr. Chen is affiliated with Neutrogena Corporation in California.

[17]Sunscreen Drug Products for Over-the-counter Human Use; Proposed Amendment of Final Monograph, 72 Fed. Reg. 165 (proposed Aug. 27, 2007) (to be codified at 21 C.F.R. 347 and 352).

[18]These comments are dated December 26, 2007 and reference "docket no. 1978N-0038, Regulatory Information No. 0910-AF43."

to "UVB/SPF" as potentially confusing to consumers. (H.Ex. P-9[19] at 13; D.I. 37 at 150)

In response to plaintiff's arguments, defendant asserts that the bar graph is not inaccurate because: (1) it does not specifically equate SPF with UVB protection alone; (2) even if the ad equated SPF and UVB, this would not be scientifically inaccurate; (3) because SPF and PFA measure different biological endpoints (SPF assesses sunburn, PFA assesses pigment darkening), the PFA and SPF scores are not redundant; and (4) notwithstanding the foregoing, the parties' testing demonstrates that defendant's products have higher SPF and PFA scores across the Sport®-branded product lines. (D.I. 30 at 2) In addition to the FDA's 2007 comment, defendant cites several publications describing SPF as a valid measure of UVB protection alone. (D.I. 30 at 2, citing, e.g., H.Ex. D-7[20] ("Currently, sunscreen labels are required to carry a 'Sunburn Protection Factor' (SPF) value that informs potential users how well the product protects against UVB light."); H.Ex. D-10[21] ("While SPF is a universal measure of protection against UVB rays . . . there is currently no standard for UVA rays[.]")) Finally, Appa testified that the bar graphs were proportional because the differences in SPF and PFA scores correlate to UV protection, or the amount of UV radiation that reaches the skin over a period of time. (D.I. 37 at 138-40) Specifically, a SPF of 60 blocks

---

[19]The comments are dated December 20, 2007 and also reference "docket no. 1978N-0038, RIN No. 0910-AF43."

[20]A publication by the FDA Consumer Health Information, entitled "FDA Aims to Upgrade Sunscreen Labeling," dated August 23, 2007.

[21]MedicineNet.com, Rules for a Safe Summer, http://www.medicinenet.com/script/main/art.asp?articlekey=51192 (printed May 20, 2009).

14

98.3% of UV rays, allowing 1.7% to penetrate, while a SPF of 30 blocks 96.6% of rays,

allowing twice that amount, or 3.4% of UV rays, to penetrate the skin. (Id.)

## C. Likelihood of Success – Literal Falsity

Liability arises if the commercial message or statement is either (1) literally false

or (2) literally true or ambiguous, but has the tendency to deceive consumers. See

Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993).

> In analyzing whether an advertisement or product name is literally false, a court must determine, first, the unambiguous claims made by the advertisement or product name, and second, whether those claims are false. A "literally false" message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated. Regardless, only an unambiguous message can be literally false. The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported.

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer

Pharmaceuticals Co., 290 F.3d 578, 587 (3d Cir. 2002) (internal quotations and

citations omitted). Plaintiff asserts that three points of advertising are literally false; the

court addresses each in turn.

### 1. "Without Helioplex®"

Plaintiff asserts that defendant's ads are literally false for portraying that

sunscreens "without Helioplex®" do not impart UVA/UVB protection.[22] As noted

previously, the club pack packaging contains illustrations depicting that "with

Helioplex®," UVA rays are deflected from the skin, while "without Helioplex®," UVA rays

are not deflected from the skin. Plaintiff asserts that this illustration conveys that other

---

[22]This is not stated directly; it is essentially an argument that this message is "conveyed by necessary implication."

15

companies' products, which do not contain the proprietary Helioplex®, do not protect against UVA rays. Agin has stated that plaintiff's "Coppertone® sun protection products are photostable and protect the skin from UVA and UVB rays without using [H]elioplex®." (D.I. 5 at 9, citing *id.*, ex. B at ¶ 30; D.I. 31 at 3, citing D.I. 37 at 52:4-8)

As an initial matter, the court finds that the "without Helioplex®" illustrations are not unambiguous. Neither the club pack packaging nor the in-store display makes an express statement comparing individual products. The club pack packaging contains one picture depicting skin without sunscreen, allowing both UVA and UVB rays to permeate it, while another depicts skin with a yellow band over it (sunscreen "with Helioplex®") deflecting both types of rays. The text above the illustration explains that "[s]unscreens **can** lose the ability to block UVA rays over time." (emphasis added) This is not an affirmative statement that any particular competitor's sunscreens lose this ability. Similarly, defendant's in-store display depicts skin protected by SPF alone deflecting UVB (but not UVA) rays, while skin protected by SPF "with Helioplex®" deflects both rays.[23] No direct comparison to plaintiff's (or other competitors') products is made.

On their face, there is nothing false about defendant's statements. There is no debate that, without sunscreen, UVA rays penetrate the skin. Nor does plaintiff contest the fact that defendant's sunscreens with Helioplex® protect the skin from both UVA and UVB radiation. While defendant's illustration could be interpreted to mean that

---

[23]Defendant has represented that it has pulled its in-store displays containing the "with/out Helioplex®" illustrations. (D.I. 12 at 13) Plaintiff asserts that defendant has a new in-store display containing the same illustrations in an accompanying brochure. (D.I. 31 at 4) The court's analysis with respect to the club packs applies equally to other replications of this illustration in defendant's merchandising.

products that do not contain the proprietary "Helioplex®" do not block UVA rays, as plaintiff asserts, the illustration lends itself to another interpretation: that using a layer of sunscreen "with Helioplex®" protects skin against UVA rays, while using no sunscreen does not. A conclusion of literal falsity is less likely where an advertisement is open to interpretation. *See Novartis,* 290 F.3d at 587. While a fact-finder could ultimately conclude that the illustration is misleading, the message conveyed is not unambiguous, and injunctive relief is not warranted.

### 2. The print ad: "Best line" of protection

The second set of statements asserted by plaintiff to be literally false are that Neutrogena Ultimate Sport® is the "[b]est line of sport sun protection" and that it is "the best line of sport protection available with sunscreen fortifiers." Under the Lanham Act, puffery is not actionable as it "is distinguishable from misdescriptions or false representations of specific characteristics of a product." *Castrol,* 987 F.2d at 945-96. Plaintiff argues that defendant's message "is linked to a 'specific attribute' of the product, namely that it is a 'sport sun protection' product," and is "a claim juxtaposed with a comparison to Coppertone®." (D.I. 5 at 12) The court disagrees. The parties in this case strongly debate what SPF measures in terms of the quantity of UVA and UVB rays blocked. The terms "sport sun protection" and "sport protection" are more vague than SPF or PFA, which correlate to some particular quantity of blocked radiation. Plaintiff has not provided evidence to the contrary.

Notwithstanding, Agin admits that "best" has many different potential meanings; generally, its meaning turns on the comparison drawn. (D.I. 37 at 112:11-114:7) Agin also conceded that the print ad makes no head-to-head comparison with any other

17

products. (*Id.* at 112:6-7) Both statements support the court's conclusion that the print ad, if it is not unactionable puffery, is not unambiguous and cannot be deemed "literally false." *Novartis*, 290 F.3d at 587.

### 3. The print ad: Bar graph

Plaintiff asserts that the bar graph contained in the print ad is literally false in two respects: (1) the table (compiling SPF and UVA protection) incorrectly double-counts UVA protection, which is already part of the SPF measurement; and (2) the table represents that Neutrogena Ultimate Sport® imparts about 100% more combined SPF and UVA protection than Coppertone Sport®, while defendant's own test results demonstrate a lower margin of difference. (D.I. 31 at 5) The court addresses each argument in turn.

### a. Double counting

Both parties have introduced evidence regarding the "SPF" measure. There appears to be no dispute that, as a technical matter, SPF is a measure of both UVB and UVA protection — UVA making up only a small proportion of that value. (*See* H.Ex. P-10 (defendant's informative materials showing SPF is 80% UVB/20% UVA); D.I. 37 at 129:22-130:4 (Appa's testimony that SPF is approximately 90% UVB/10% UVA)) Perhaps due to the predominancy of UVB in this measurement, there is some indication that consumers view SPF as a measure of UVB. The most notable evidence in this regard is the FDA's statements that SPF "informs potential users how well the product protects against UVB light" and that "[f]or more than 30 years, consumers have been

18

able to identify the level of UVB protection provided by sunscreens using . . . UVB light."[24] (H.Ex. D-7)

For the foregoing reasons, the court does not find that the graph imparts a clear or unambiguous message such as could properly be the basis for a finding of literal falsity. A contrary determination would be inconsistent with the reality that the parties have presented conflicting evidence, presented by equally credible experts, regarding what information the "SPF" measurement imparts to consumers.[25] This is demonstrably a matter to be fleshed out during the course of the litigation. Plaintiff does not rely on survey evidence in support for its motion for a preliminary injunction. As such, injunctive relief must be denied.

## 2. Twice the effectiveness

The court next addresses whether plaintiff has demonstrated that defendant's representation of approximately 100% more combined UVA/SPF protection for its Neutrogena Sport® line is literally false.[26] As an initial matter, plaintiff offers a broader range of SPFs for its "Coppertone Sport®"-branded line of products (SPF 15 to 70+) than does defendant for its "Ultimate Sport®"-labeled products (SPF 55 to 70+). (D.I. 13 at ¶ 25) The parties do not disagree that an SPF of 30, for example, protects a

---

[24]As discussed *supra*, defendant has introduced other evidence to this effect.

[25]Notwithstanding, the court would not find the table in question false on its face insofar as it does not equate SPF with UVB alone. Moreover, to the extent UVA is counted both within the SPF portion of the "bar" and again in the "UVA" portion, it is done with respect to both Neutrogena Ultimate Sport® and Coppertone Sport® products (on both sides of the graph).

[26]The court does not deem the relative sizes of the bar graphs an ambiguous message to consumers.

19

person for twice as long as an SPF of 15. (D.I. 37 at 80-81 (Agin); 140 (Appa))  The

difference in SPF across product lines, on average, is 40% (average SPFs of 38.5 and

64).  (*Id.*)  It appears as though the "SPF" portion of the bars for both products differs by

about 40%; plaintiff points to no testimony (or survey evidence) to the contrary.

The PFA scores obtained by defendant across these product lines averaged

30.2 (Ultimate Sport®) and 16.7 (Coppertone Sport®), a near 100% difference.  (*Id.* at

¶ 26)  It appears as though the "PFA" portion of the bars for both products differs by

about 100% in height; again, plaintiff points to no testimony (or survey evidence) to the

contrary.

Insofar as there is no indication that the representative sizes of the SPF and PFA

sections of the bars is literally false, the question remaining is whether a literal

falsehood lies in defendant's comparison of product lines by raw SPF and PFA scores

as compared to the percentages of UV rays blocked, resulting in a lower differential.[27]

Defendant has introduced evidence that plaintiff, on its own website, compares various

Coppertone® and Neutrogena® products by their PFA scores.  (H.Ex. D-1[28])  The court

finds no literal falsehood in defendant's chosen method of product comparison.

### 4. Conclusion

---

[27]Plaintiff asserts that defendant's comparison of multiple products to multiple
products ("product lines") is "meaningless" (D.I. 31 at 6), but identifies no literal
falsehood therein.  Defendant asserts that its comparison of UVA/UVB protection
across an entire product line is not meaningless because the "print ad informs
consumers that regardless of which Neutrogena Sport® product a consumer buys, the
consumer will be assured an excellent level of UVA/UVB protection[.]"  (D.I. 30 at 6-7;
D.I. 37 at 132)  This is a matter to be fleshed out through consumer survey evidence.

[28]Coppertone.com, The Science Behind Sun Protection,
http://www.coppertone.com/coppertone/science_education.jsp (printed May 5, 2009).

20

The court declines to find, under the circumstances at bar, that plaintiff has demonstrated the requisite likelihood of success to justify the extraordinary relief of an injunction at this stage.  The court need not address the parties' arguments regarding irreparable harm, but notes that insofar as plaintiff has not demonstrated a likelihood of success on the merits, no presumption of irreparable harm would apply in this case.

## V. CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction is denied. An appropriate order shall issue.